Good morning, judges. May it please the court, my name is Dave Vishwanath from the Bonnard Law Offices, representing the appellant John Jr. James Derrick, Jr. Singh. And may I assume that the court is aware of the facts? Or would you like a recitation? Yeah, okay. So, your honors, there are really three issues here related to the fact that under New York penal law 120.05, subsection 2, which is assault in the second degree, subsection 2, is not a crime of violence under 18 U.S.C. 16A, which is the elements clause. Obviously, we heard now after Sessions v. DiMaia that 16B was found unconstitutional for vagueness. But if we look at the clauses, we can see that, one, the language of the New York penal law, in comparison to the language of 16A, are not compatible. Two, the New York penal law does allow for omissions of actions to occur. And three, I believe that it is a realistic probability that one may find liability under New York penal law 120.05, subsection 2, and still not under 16A. Is it? Yes, Judge. My question is, when can we simply look at this case in this way, that there is a clause on that section 125.05.2, which is not a crime of violence, because it also requires the New York penal law to allow you to have no dangerous instrument. The section has the case, the instrument says, defines any instrument, article, or substance which, under the circumstances in which it should be used, has to be used, effectively used, and readily capable of causing death to other citizens who are in danger. So, looking at the interaction between 125.05.2 and 120.05, subsection 2, the language specifically says, by means of a deadly weapon or dangerous instrument. It doesn't necessarily say that you had to actively use that instrument to occur. It says, by means of a deadly weapon or dangerous  And if we look at New York penal law 1510 What does active use mean? I mean, you know, if there's a deadly weapon that, you know, is used, that eventually causes the injury, why isn't that sufficient? And if it was engineered by or the mens rea is there for the defendant, why isn't that sufficient? Judge, active use is a specific action in some way. It's like the difference between conduct and action. But the other main point that I'm stuck on from your side is how the, it goes to this question that we asked you to brief, the omissions aspect of it. You gave some hypotheticals that were interesting, but they seem far-fetched to me in the sense that they would result in a prosecution. And we couldn't find any, and the other side couldn't find any actual cases that supported omission. And there's specific language from the Supreme Court on that point, that if it's fanciful and not realistic, then the hypothetical that there could be a lesser crime committed or a lesser act committed than under the generic offense, that's not enough. And that seems to me the case here. Judge, you know, it's interesting because I do feel that there is some view, even from the New York State court, I mean, the language of 1510 specifically says, the minimal requirement for criminal liability is the performance by a person of conduct which includes a voluntary act or the omission to perform an act while he's physically capable of performing. And while I couldn't find a New York case specifically, I did actually find, and I use this as a reference, a New Hampshire Supreme Court case from 2017. That's the People v. Starr. And in that case, they found assault in the first degree and assault in the second degree by virtue of an omission to act as being able to find the conduct violated of the statute. Yes, Judge. Judge, you know, I think that one of the things that happens, particularly in prosecutions, is that we see an evolution of cases, an evolution of crimes that exist. You know, I mean, one of the reasons why they put this in there is specifically because they contemplate, the writers of it contemplated the fact that maybe an omission to act when you're physically capable of doing so might be a crime. I found several cases, even as of this year, where, you know, I used the example of the umbrella, but several times where umbrellas were flying across the beach and hurting individuals. There's also been lawsuits that have actually occurred on the civil side to these beaches. But they say something like thousands of these beach umbrellas like fly out of either tables or sand regularly and hurt individuals. And they've already brought cases on the civil side to it. So I don't think it's a very big stretch to start seeing those cases start to become criminal, especially in light of the fact that we are looking at things like social media. We are looking at tweets. I mean, regularly we see these, like, you know, supremacists. I mean, that sounds like the theoretical, the distinction between realistic and theoretical, right? You're saying you're describing something that could happen, but you can't point to a case where it actually has happened. And that, to me, seems like the distinction between realistic and theoretical, which is where the line is, right? Well, Judge, I mean, if we say realistic isn't something that you can conceive of, I mean, theoretical is, and I would hope that we see, I mean, they use the words fanciful. We're not talking about something that's fanciful. We're seeing something that really could happen. I mean, I use that example of the dog as well. I mean, if I wanted you to walk into a room, or I'm saying I knew you were going to walk in that room, and I don't warn you, right, I'm physically capable of stopping you because I know that dog's going to attack you, I don't do it, it seems to me that that's very plausible, and it could happen, you know? And that's not something that 16a encompasses, but it's definitely something that the 120.05, subsection 2 encompasses. And the other part to this which I think is very interesting is the actual words of 120.05, you know, subsection 2, which use the word physical injury as opposed to serious physical injury. You know, Judge, in all of the cases, including the last case, Banegas, which was rendered the decision in April of this year, that was a Connecticut statute, first-degree assault, but similar language, except for the fact they use serious physical injury. And in the New York subsections, there are particular subsections that use the word serious physical injury, but in this particular subsection, it only says physical injury. I can reference the judge's jury instructions for this subsection, and when they discuss physical injury, they say physical injury means impairment of a physical condition or substantial pain. Now, in the same group of assault second-degree, but subsection 4, serious physical injury means impairment of a person's physical condition which creates a substantial risk of death or which causes death or serious or protracted disfigurement or protracted impairment of health or protracted loss of impairment of the function of any bodily organ. And that seems much more in line with the cases and the direction that your honors have been going in. One other thing I wanted to just, I see my time is ending up, but the court in Chesanowski said there's a difference between causation of injury and injuries causation by the use of physical force. And your honor, Judge Gatzman said, given the elements of 53A61A1 under the Connecticut law, it seems that an individual could have been injured, but by guile, deception or even deliberate omission. You're talking about for the CAT claim, Judge? Yeah. So under the Convention Against Torture, so one of the issues that came up was that Judge Christensen counted on the WIO offense. And we believe that in his estimation of the WIO offense that occurred, that that actually affected the appellant's due process. You know, he should not have considered anything related to the WIO offense, particularly on the fact that it was brought up the day of the merits hearing. And so there was not even an opportunity to really discuss that. Thank you, Judge. Thank you, Your Honor. Good morning. May it please the Court. Keith McManus on behalf of the Respondent. More than a decade ago, the Court held in Walker, considering the essential elements of this State statute, that the requirement that the accused intentionally cause physical injury by means of a deadly weapon or dangerous instrument necessarily involves the use of physical force on any reasonable interpretation of that term. That conclusion is as true now, Your Honors, as it was then. And if anything, intervening authority has only further bolstered that conclusion. Again, to overcome the apparent categorical match between the State statute and the generic Federal definition. It's your point, then, that the generic definition's use or reference to the term use of physical force, or use physical force, is a, is not to be taken as necessarily as active use. It's just, it's a means by which it's done, and that necessarily that means physical force is being used, even if it's being done in a passive way. That is ultimately the government's position, Your Honor. But I think, first of all, there's a threshold question, as every judge has already raised at this point, which is about the realistic probability test, meaning that. Well, and that's important, Your Honor, because it defeats the question, or sorry, defeats the argument that the statute is somehow facially overbroad at the threshold. Because if you cannot establish that New York would actually prosecute conduct that extends beyond the generic Federal definition, then the inquiry ends there. And as everyone has, again, suggested, there are no existing New York State cases that actually demonstrate that this State statute would be prosecuted in light of conduct constituting a deliberate omission and an omission alone. You yourself acknowledge that in the case of the Full Mercer Program, which involved a different statute or position, but arguably, it suggests that the Defendant's Prohibitions Act can be active. So does that weigh this? It weighs against this only in the sense that it suggests other provisions of New York State law may be actionable in light of omissions. The question for the Court is whether this particular subdivision has ever, in fact, been prosecuted or resulted in an actual conviction in light of that conduct. And I think it's important to draw that distinction, Your Honor. The Third Circuit, for example, in considering a similar argument and in rejecting the idea that the categorical approach should extend to these sort of hypotheticals said it's nearly impossible to conceive of a scenario in which a person could knowingly and intentionally cause physical injury with a deadly weapon without engaging at least some affirmative physical conduct. And that's important here because there may be provisions in New York, even within the assault statute itself, that can be prosecutable in light of an omission. But that is not subsection 2. And again, there is no existing case law to suggest otherwise. And that's important for the realistic probability test. That actually answers the question in the Court. What's the significance to your adversary's point that the word serious is not included in sub 2 here? There really is no relevance, Your Honor, because there really was no debate about the quantum of force here. And again, Johnson teaches that physical force in this context is violent force, which is really just force capable of causing physical pain. It doesn't require the causation of serious physical injury. So the absence of serious physical harm as opposed to just mere physical injury in the state statute doesn't have any relevance to the inquiry. This is, again, as the Court already held in Walker, involves the use of physical force as Johnson defines it under any reasonable interpretation of that term. We then relate that to Section 10, Part 12. And we look at the concept of dangerous injury. And we have to get into the question of whether or not the serious physical injury or not resides in dangerous injury, which clearly says any injury required under the circumstance in which it is used. It can't just be a threat to the injury. It might also be a cause of death or serious injury. That's my question. Certainly, Your Honor. And at a minimum, that suggests that using a dangerous instrument, which conceivably anything that falls under the category you just described, as opposed to a deadly weapon, necessarily involves the use of force, even under, you know, a definition that would somehow extend to serious physical injury as opposed to just physical pain. But, again, the minimum requirement under Johnson is just force capable of causing that pain. And, again, this Court has already confirmed after Walker that this state statute involves that quantum of force. And, again, that was not even at issue in this case and never has been. With regard to the omission issue, though, Your Honor, I do want to make clear, as Judge Walker asked, that even if the Court were to assume or were to find that there is a realistic probability that the state statute might be extended to potentially non-generic conduct, which include, I guess arguably could include omissions, the government's position is that those, that type of conduct still necessarily involves the use of force as 16a requires. And that is because, in light of Castleman and the Court's interpretation of that decision, the notion, basically Castleman rejects the notion that indirect force, even by guile, deception, or inaction, somehow does not use physical force. That's been abrogated by Castleman, as this Court held in both Villanueva and Venegas-Gomez. And so even this type of passive conduct or inaction, as it were, does not apply still requires the deliberate, that still results, I should say, in the deliberate causation of physical injury, must necessarily require a use of force under 16a. And again, there's plenty of cases, not the least of which is Venegas-Gomez and Villanueva, most recently, to confirm that interpretation. And although none of those decisions expressly decide or consider the omissions issue, there is no principal reason for excluding omissions, as opposed to other indirect conduct, like guile or deception, from the statutory and generic Federal definition. And so in light of both the realistic probability test, this Court's case law interpreting Castleman, there is no reasonable interpretation of this State statute that results in anything other than a categorical match with a crime of violence under 16a. And to get back to one of Judge Katzmann's questions for my opponent, I just want to make clear that it is the government's position that, assuming Mr. Singh is, in fact, removable as charged as an aggravated felon, the Court's review would be limited to only colorable constitutional and legal claims. And here, with regard to both the particular serious crime determination that bars withholding of removal and the merits of the CAT determination, there are no reviewable claims. And to the extent that they are reviewable, they are meritless. Thank you. Right, Your Honor. And that goes specifically to the agency's particular serious crime determination. The case law I think you're referring to generally extends to findings of removability where the government would bear the burden of proof. And so, for example, proving that someone had been convicted of an aggravated felony or a crime involving moral turpitude, the government wouldn't necessarily be permitted to rely on conviction documents that rely exclusively on that type of information, hearsay or unproven allegations, to give rise to conviction. But here, Your Honor, when you're talking about a discretionary determination that an underlying offense bars discretionary relief or protection, then the only question is whether or not the hearsay is relevant, probative and its use fundamentally fair. And here, what you have with regard to the Y.O. offense or even the underlying conviction itself, certainly are police reports and investigations and hearsay. But that is completely relevant to the question of whether or not Mr. Singh's offense is particularly serious for purposes of withholding of removal. And that is distinguishable from the question of whether or not it might, in fact, be a removable offense. And so the use of that information here was fundamentally fair and appropriate under the circumstances. This Court has approved of the PSC sort of construct that the Board determined in a matter of NAM. And that allows for the consideration of any relevant evidence, whether within conviction documents. I see my time has expired, Your Honor. May I just finish answering your question? Whether it be conviction documents or evidence outside conviction records, for the crime is particularly serious. Thank you, Your Honor. Justice, can I just have a quick rebuttal or closing up on this? One, with respect to the Catt claim and the judgment on particularly serious crime, I just want to reiterate that, you know, it was a Y.O. offense. And generally speaking, especially within the immigration context, that wouldn't even have been considered a crime per se. And then on the issue of injury versus serious injury, I thought the distinction was great and well, well discussed in terms of the Banegas case, which happened recently in this year, and Chisinauske. Because Chisinauske specifically, in the language of that statute, used the words injury. But in Banegas, it specifically uses the words serious physical injury. And I think that that distinction, especially in light of the fact that the Connecticut statutes, in many ways, mimic the New York statutes. And then the case in New Hampshire that I brought up, they specifically discussed this issue of omissions. And in New Hampshire, it's called the code. Whereas here, it's part of our penal. I see my time is just about to end. Okay. Yep. But in our penal code, it actually is defined. And they specifically talk about omissions when physically capable. I think that that's not fanciful. I mean, they obviously were contemplating this when they came up with the idea of when culpability may occur. And that was the case here. And I think this Court should find in favor of the fact that 120.05, Subsection 2, is not a crime of violence under 16A. Thank you. Good morning, Your Honors. Of course, Judge. Thank you, Judge. Good morning from Mr. Callahan and Andrew Frisch. Bond on petitions should be limited, but this is an extreme case. And I want to start by pointing out what the government said about the $96 million on the day of Callahan's guilty plea. This is an exhibit before the Court and also in district court. It's one of the government's press releases about Mr. Callahan's guilty plea. And it says, Earlier today, Callahan pleaded guilty to operating a $96 million Ponzi scheme. And then a little bit further down, it says, When sentenced, he faces up to so many years in prison and the payment of approximately $96 million in restitution. So if Paragraph 22 of the indictment, Paragraph 39 of the PSR, the letter to Judge Spat in April of 2014, just a few weeks before the guilty plea, didn't make clear that the value of the fraud, apps and credits, was $96 million and not a penny more, the press release, their contemporaneous statement that day, did it. That's it. That's the government's part of the indictment.